IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
J & J SPORTS PRODUCTIONS, INC.,  )
                                 )
          Plaintiff,             )
                                 )
     v.                          )      1:12CV5
                                 )
JOSE FRANCISCO CASILLAS,         )
individually and d/b/a           )
EL CAMINO REAL,                  )
                                 )
          Defendant.             )
```

### MEMORANDUM OPINION AND ORDER

The instant matter comes before the undersigned United States Magistrate Judge on Defendant Jose Francisco Casillas' Motion to Set Aside Entry of Default (Docket Entry 11). (See Docket Entry dated June 15, 2012.) For the reasons that follow, the instant Motion will be granted.[1]

### BACKGROUND

Plaintiff, a corporation based in Campbell, California, brought the instant action against Defendant, individually and doing business as El Camino Real, a commercial establishment located in Greensboro, North Carolina. (Docket Entry 1, ¶¶ 5-6.)

---

[1] The entry of default (and thus the decision to set aside or to leave in effect such an entry) constitutes a pretrial matter that does not dispose of any claim or defense; as a result, courts have treated motions of this sort as subject to disposition by a magistrate judge under 28 U.S.C. § 636(b)(1)(A). See, e.g., Bailey v. United Airlines, 279 F.3d 194, 204 (3d Cir. 2002); L & M Cos., Inc. v. Biggers III Produce, Inc., No. 3:08CV309-RJC-DCK, 2010 WL 1439411, at *8 & n.3 (W.D.N.C. Apr. 9, 2010) (unpublished). Under these circumstances, the undersigned Magistrate Judge will enter an order rather than a recommendation.

According to the Complaint, Plaintiff had exclusive nationwide distribution rights to the program "*Firepower": Manny Pacquiao v. Miguel Cotto, WBO Welterweight Championship Fight Program* ("the Program"), airing on November 14, 2009. (Id. ¶ 8.) The Complaint further alleges that Defendant intercepted the Program and exhibited it at his establishment without authorization from Plaintiff. (Id. ¶ 11.) Based on these allegations, the Complaint seeks relief under 47 U.S.C. §§ 553 and 605 (the "Cable Act"), as well as for conversion under North Carolina law. (See id. ¶¶ 7-25.)

On January 24, 2012, Plaintiff filed an executed Proof of Service of the Summons, in which a private process server affirmed that he "personally served the summons" on "Jose Francisco Casillas DBA El Camino Real" at 8:10 PM on January 16, 2012. (Docket Entry 5 at 1.) On March 18, 2012, Plaintiff filed a Motion for Entry of Default (Docket Entry 7) "on the grounds that [] Defendant has failed to appear or otherwise respond to the Summons and Complaint within the time prescribed by the Federal Rules of Civil Procedure" (id. at 1). The Clerk of Court entered default against Defendant on March 19, 2012. (Docket Entry 8.)

On April 26, 2012, Defendant filed the instant Motion. (Docket Entry 11.) Plaintiff timely responded in opposition (Docket Entry 13) and Defendant replied (Docket Entry 16).

DISCUSSION

The Federal Rules of Civil Procedure provide that "[t]he court may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). The United States Court of Appeals for the Fourth Circuit has set forth the relevant factors to make this determination as follows:

> When deciding whether to set aside an entry of default, a district court should consider [1] whether the moving party has a meritorious defense, [2] whether it acts with reasonable promptness, [3] the personal responsibility of the defaulting party, [4] the prejudice to the party, [5] whether there is a history of dilatory action, and [6] the availability of sanctions less drastic.

Payne v. Brake, 439 F.3d 198, 204-05 (4th Cir. 2006). The Court must liberally construe Rule 55(c) "to provide relief from the onerous consequences of defaults and default judgments," Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir. 1987) (internal quotation marks omitted), because the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits," Colleton Prep. Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010).

### 1. Meritorious Defense

"A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party . . . ." Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988); see also United States v. Moradi, 673 F.2d

725, 727 (4th Cir. 1982) ("[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which if believed would permit either the Court or the jury to find for the defaulting party."); cf. Maryland Nat'l Bank v. M/V Tanicorp I, 796 F. Supp. 188, 190 (D. Md. 1992) ("The mere assertion of a meritorious defense is not enough, Defendant must state the underlying facts to support the defense.").

Defendant argues that, "given the early stages of this proceeding and the fact that [Defendant] was not properly served with process, the meritoriousness of [Defendant's] defenses does not weigh heavily in favor of either party as the parties simply do not yet have a full record." (Docket Entry 12 at 3.) Further, Defendant states that:

> he does have a meritorious defense. In order to award the relief sought by [] [P]laintiff, both Federal statutes giving rise to this Court's jurisdiction require that the defendant's actions were committed willfully and for purposes of commercial advantage or private financial gain. [Defendant] contends that Plaintiff will be unable to prove either element. Therefore, this factor weighs in favor of setting aside the default.

(Id. (internal citation omitted).) Plaintiff, on the other hand, asserts that, "[w]hile the burden of establishing a meritorious defense is not significant, it cannot be met by conclusory denials." (Docket Entry 13 at 4.)

Defendant's argument concerning a meritorious defense does appear to consist merely of conclusory denials and to omit any proffer of evidence. (See Docket Entry 12 at 3.) However, in his

-4-

Reply (Docket Entry 16), Defendant reasserts that he does have a meritorious defense in that he did not show the Program for purposes of commercial advantage (id. at 2) and offers an affidavit in support (Docket Entry 16-1). In the affidavit, Defendant avers that:

(1) he "did not show [the Program] for the purposes commercial [sic] advantage or private financial gain" (id. ¶ 3);

(2) he did not advertise that his establishment would show the Program (id. ¶ 4);

(3) he "did not charge a fee for patrons to enter El Camino Real" on the night of the Program (id. ¶ 5);

(4) he ordered the Program at the request of his friends and family "so that [they] could all watch it together" (id. ¶ 6);

(5) he "paid for [the Program] through the Direct TV website, and [he] thought that since [he] paid for it, [his] family and friends were allowed to watch it" (id. ¶ 7); and

(6) "El Camino Real made less money on November 14, 2009 [the night of the Program] than some of the other days in November of 2009 when no fight was shown" (id. ¶ 12).

Defendant's affidavit clearly challenges in a non-conclusory fashion the Complaint's allegation that Defendant acted "willfully and for purposes of direct or indirect commercial advantage or private financial gain" (Docket Entry 1, ¶ 12). Under the Cable Act, "[i]n any case in which the court finds that the violation was

-5-

committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section." 47 U.S.C. § 605(e)(3)(C)(ii); see also 47 U.S.C. § 553(b)(2) (laying out similar penalty scheme). Count I of Plaintiff's Complaint alleges that Defendant's exhibition of the Program "[was] done willfully and for purposes of direct or indirect commercial advantage or private financial gain" (Docket Entry 1, ¶ 11) and that Plaintiff is therefore "entitled to . . . [s]tatutory damages for each willful violation in an amount to [sic] $100,000.00 pursuant to Title 47 U.S.C. 605(e)(3)(C)(ii)" (id. ¶ 15). Count II likewise seeks "[s]tatutory damages for each willful violation in an amount to [sic] $50,000.00 pursuant to Title 47 U.S.C. 533(b)(2) . . . ." (Id. ¶ 20.)

Under these circumstances, Defendant has presented a meritorious defense. See, e.g., National Satellite Sports, Inc. v. Carrabia, No. 4:01 CV 1474, 2003 WL 24843407, at *4 (N.D. Ohio Mar. 11, 2003) (unpublished) (denying summary judgment in favor of plaintiff as to damages under the Cable Act where defendant's affidavit states he did not advertise, charge cover, or receive financial benefit from unauthorized viewing of similar program).

-6-

Case 1:12-cv-00005-LPA-LPA Document 17 Filed 03/01/13 Page 6 of 12

Accordingly, the first factor weighs in favor of setting aside the Clerk's entry of default.

### 2. Reasonable Promptness

"Whether a party has taken 'reasonably prompt' action, of course, must be gauged in light of the facts and circumstances of each occasion . . . ." Moradi, 673 F.2d at 727. Defendant filed his instant Motion on April 26, 2012, almost four months after service of the Complaint and 38 days after the Clerk entered a default. (See Docket Entries 5, 8, 11.)[2] Other courts addressing this issue have found similar or longer delays acceptable. See, e.g., Lolatchy, 816 F.2d at 952-54 (permitting case to proceed on the merits although moving party delayed ten months after court entered default before filing its motion to set aside default); Vick v. Wong, 263 F.R.D. 325, 330 (E.D. Va. 2009) (finding that reasonable promptness factor weighed in favor of setting aside default where moving party did not respond for more than two months after clerk entered default); Wainwright's Vacations, LLC v. Pan Am. Airways Corp., 130 F. Supp. 2d 712, 718 (D. Md. 2001) (concluding moving party acted with reasonable promptness by moving to vacate default slightly more than one month after entry of

---

[2] Defendant further argues that he acted reasonably because he "was not personally served with the summons in this matter" and therefore did not learn "that this action had been commenced [until] March 23, 2012, when [he] received the Entry of Default via U.S. Mail." (Docket Entry 12-1, ¶¶ 3-4.) In light of the Court's treatment of this factor, no need exists to consider Defendant's foregoing argument in this context.

default).  The second factor thus supports setting aside the entry of default.

### 3. Personal Responsibility

Defendant argues that he "has no responsibility for the original default as he had no actual notice of the action until after the Clerk had entered the default."  (Docket Entry 12 at 4.) He further contends, and supports by affidavit, that he "was not properly served with process" (Docket Entry 12 at 3; see also Docket Entry 12-1, ¶ 3) and that "Maria Ramirez, an employee of [D]efendant, who personally interacted with the process server, did not give the summons to [Defendant] or even tell him about it" (Docket Entry 12 at 4; see also Docket Entry 12-1, ¶ 5).  Defendant also offers an affidavit from Ms. Ramirez indicating she accepted an envelope from a messenger on the evening the process server claimed to have served Defendant and that "the gentleman who delivered it did not indicate it was anything important" so she "placed the envelope in a stack with other documents instead of handing it to [Defendant]."  (Docket Entry 12-3, ¶¶ 3-7.)

The Proof of Service indicating the process server served the Summons on Defendant (Docket Entry 5), in addition to the process server's affidavit averring the same (Docket Entry 13-1, ¶ 2; see also Docket Entry 14, ¶¶ 2-7), establish a prima facie showing of proper service under North Carolina law.  See Crabtree v. City of Durham, 136 N.C. App. 816, 818, 526 S.E.2d 503, 505 (2000) ("When

-8-

[a] return of service on its face shows legal service by an authorized officer, that return is sufficient, at least *prima facie*, to show service in fact."). "The *prima facie* evidence established by a valid return of service may be rebutted only by producing affidavits of *more than one* person showing *unequivocally* that proper service was *not* made upon the person stated in the return of service." Id. (citing Grimsley v. Nelson, 342 N.C. 542, 545, 467 S.E.2d 92, 94 (1996)).

The affidavits of Defendant and Maria Ramirez provided by Defendant rebut Plaintiff's prima facie evidence of proper service. (See Docket Entry 12-1, ¶¶ 3-5; Docket Entry 12-3, ¶¶ 3-7.) The Court therefore cannot determine whether Defendant bears responsibility for the entry of default. See, e.g., Turpin v. Wellpoint Cos., Inc., Civil Action No. 3:10CV850-HEH, 2011 WL 1086482, at *2 (E.D. Va. Mar. 23, 2011) (unpublished) (recognizing that "personal responsibility" factor can turn on whether proper service occurred). This factor thus does not weigh in favor of or against setting aside the entry of default.

### 4. Prejudice

In support of a showing of prejudice, Plaintiff asserts that "Defendant's actions, including his disregard for mail for over two months, indicates that there will be increased difficulties in

discovery." (Docket Entry 13 at 8.) The prejudice Plaintiff asserts is purely speculative and unrelated to any delay by Defendant in responding to the Complaint. Moreover, the Fourth Circuit has found prejudice lacking under the following circumstances:

> There was no missing witness in the case whose testimony was made unavailable by the delay; there was similarly no dead witness; neither were there any records made unavailable by the delay, nor was there any evidence for the plaintiff which could have been presented earlier, the presentation of which was prevented by the delay. . . . So the record shows without contradiction that the plaintiff suffered no prejudice on account of the delay.

Lolatchy, 816 F.2d at 952-53. These same circumstances exist in this case. Accordingly, this factor weighs in favor of setting aside the entry of default.

### 5. History of Dilatory Action

Separate from the delayed response to the Complaint, the record does not reflect evidence of dilatory conduct by Defendant. This factor therefore favors setting aside the entry of default.

### 6. Less Drastic Sanctions

Defendant contends that "no sanctions are necessary in this instance, and urges the Court to allow this case to proceed on the merits." (Docket Entry 12 at 5.) He concedes, however, that, if the Court, "in its discretion, is inclined to explore alternative sanctions, Plaintiff could presumably bring an appropriate motion for costs associated with obtaining the entry of default. This factor, therefore, weighs in favor of setting aside the default."

-10-

(Id.)  Plaintiff, in turn, does request that, "to the extent the Court is inclined to set aside the default, . . . it be permitted to submit its costs and attorneys' fees related to obtaining the default and defending against Defendant's Motion to Set Aside." (Docket Entry 13 at 10.)  The Parties therefore apparently agree that sanctions less drastic than default exist and thus this factor weighs in favor of setting aside default.[3]

CONCLUSION

Factors one, two, four, five and six identified by the Fourth Circuit in Payne support setting aside the entry of default and factor three does not weigh in favor or against so doing. Furthermore, the Fourth Circuit has stated a strong preference that "defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Prep. Acad., 616 F.3d at 417.  Under these circumstances, good cause exists to set aside the entry of default in the instant case.

---

[3] Given the conflict in the evidence over service, the Court declines to order any cost-shifting at this time.

-11-

**IT IS THEREFORE ORDERED** that Defendant Jose Francisco Casillas' Motion to Set Aside Entry of Default (Docket Entry 11) is **GRANTED**. Defendant shall answer or otherwise respond to the Complaint by March 15, 2013.

                                              /s/ L. Patrick Auld
                                                     **L. Patrick Auld**
                                   **United States Magistrate Judge**
March 1, 2013